UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
JULIO ISLEY SMITH,
                              :
            Plaintiff,            REPORT & RECOMMENDATION
                              :
        -against-                07 Civ. 11241 (PAC)(MHD)
                              :
JANET MAYPES-RHYNDERS et al.,
                              :
            Defendants.
------------------------------x

TO THE HONORABLE PAUL A. CROTTY, U.S.D.J.:


    Pro se plaintiff Julio Isley Smith is an inmate in the New
York State correctional system. He commenced this lawsuit under 42
U.S.C. § 1983 against nine corrections officers and sergeants and
the Deputy Superintendent at Green Haven Correctional Facility
("Green Haven"), contending principally that the defendants had
engaged in a course of harassment directed against him in
retaliation for his having complained about staff misconduct. In
substance he alleges that various of the defendants made oral
threats, destroyed or stole his property (including legal papers),
and successfully pursued a baseless disciplinary proceeding against
him. He seeks damages and injunctive relief.


    Following the filing and service of an amended complaint,
defendants have moved to dismiss the newest pleading. For the
reasons that follow, we recommend that the motion be granted in

1

part and denied in part.


BACKGROUND


A. The Allegations


Plaintiff's original complaint was received by the Pro Se Clerk on September 7, 2007 and dismissed by the court sua sponte three months later, with leave to file a more detailed amended complaint. (Order dated Dec. 14, 2007). Plaintiff filed his amended complaint on February 25, 2008 and eventually served it on the defendants. They in turn moved to dismiss.


The amended complaint names as defendants Officers Janet Maypes-Rhynders, Aaron D. Rapelee, Jeffrey W. MacIssaac, Chris A. Fredricks, Charles Lawfer, Daniel Melious, and James G. Weckesser; Sgts. Alfred P. Montegari and James I. Hillman; and Deputy Superintendent Robert Cunningham. The pleading alleges in fairly non-specific terms that, in retaliation for complaints that plaintiff had made about various Department of Correctional Services ("DOCS") staff members -- including many of the defendants -- a number of these officers and sergeants at one time or another have approached plaintiff and either threatened him or engaged in verbal abuse (Am. Compl. ("Compl.") ¶¶ 14, 18, 21-25), and that

2

several of them have told other inmates that plaintiff was a child molester, thereby endangering his safety. (Compl. ¶¶ 15, 17, 26, 27). He also asserts that at one point several defendants seized some of his legal papers and "trashed" his property during a retaliatory cell search (Compl. ¶ 28), that someone -- he infers it was one or more of the defendants -- stole some memoirs that he was writing (Compl. ¶ 19), that one defendant destroyed a typewriter that he owned and a second one deliberately "flooded out" other property belonging to plaintiff (Compl. ¶ 16-17), and that at a later time the corrections officer who had destroyed plaintiff's typewriter also destroyed his legal files as he returned from a court appearance. (Compl. ¶ 30). In addition, plaintiff insists that two of the defendants filed baseless disciplinary charges against him that triggered a Tier III disciplinary hearing by a biased hearing officer, who convicted him on unspecified charges and imposed a 365-day term in the Special Housing Unit ("SHU") with other unspecified sanctions. (Compl. ¶ 29).

Based on these allegations, the complaint defines two claims. One is for retaliation. Plaintiff claims that the defendants were retaliating against him for his having filed a complaint with the DOCS Inspector General when he was incarcerated at the Great Meadow Correctional Facility and for additional grievances that he allegedly submitted, or attempted to submit, through the prison

grievance system at Green Haven, as well as for oral complaints that he made about the conduct of staff members. (Compl. ¶¶ 31-32). The other claim is, in substance, for denial of liberty and property without due process, apparently premised on the disciplinary sanctions imposed on him. (Compl. ¶ 33).

B. <u>Defendants' Motion</u>

Defendants seek dismissal, contending that plaintiff fails to state a claim for retaliation or due process. Alternatively, they argue that they are entitled to dismissal on the basis of a qualified-immunity defense. Plaintiff has filed a memorandum opposing the motion.

<u>ANALYSIS</u>

A. <u>Rule 12(b)(6) Criteria</u>

We start by noting the standards that the movant must meet in order to obtain dismissal for failure to state a claim. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), <u>overruled on other grounds</u>, <u>Davis v. Scherer</u>, 468 U.S. 183 (1984); <u>accord</u>, <u>e.g.</u>, <u>Bell</u>

4

Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007); Patane v. Clark, 508 F.2d 106, 111 (2d Cir. 2007).

In assessing such a motion, the court must assume the truth of the well-pled factual allegations of the complaint and must draw all reasonable inferences against the movant. See, e.g., Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006); Still v. DeBuono, 101 F.3d 888, 891 (2d Cir. 1996). Moreover, when the complaint has been authored, as here, by an untutored pro se plaintiff, the court is to interpet the pleading with particularly heightened solicitude, reading it "to raise the strongest arguments it suggests." Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007); see, e.g., Hughes v. Rowe, 449 U.S. 5, 9-10 (1980) (per curiam); Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991). In this regard, the court may treat the pro se plaintiff's response to the dismissal motion as a de facto amendment to, or clarification of, his complaint. See, e.g., Hernandez v. Goord, 312 F. Supp. 2d 537, 542-43 (S.D.N.Y. 2004) (citing, inter alia, Gill v. Mooney, 824 F.2d 192, 195 (2d Cir. 1987)); accord, Warren v. District of Columbia, 353 F.3d 36, 37-38 (D.C. Cir. 2004) (citing Anyanwutaku v. Moore, 151 F.3d 1053, 1058 (D.C. Cir. 1998)).

Unlike the traditional test on a Rule 12(b)(6) motion, which

required that the complaint not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," <u>Still</u>, 101 F.3d at 891 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)), under <u>Twombly</u> a purported claim will not survive unless it is apparent from the face of the complaint that the claim is at least "plausible." <u>Twombly</u>, 550 U.S. at 559; <u>see also</u> <u>Iqbal v. Hasty</u>, 490 F.3d 143, 157-58 (2d Cir. 2007), <u>cert.</u> <u>granted</u>, 128 S.Ct. 2931 (2008). <u>Twombly</u> does not impose "a universal standard of heightened fact pleading, but . . . instead requir[es] a flexible 'plausibility standard', which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim <u>plausible</u>." <u>Iqbal</u>, 490 F.3d at 157-58 (emphasis in original). In short, the pleading must "raise a right to relief above the speculative level." <u>ATSI Commc'ns, Inc. v. Shaar Fund Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007) (quoting <u>Twombly</u>, 550 U.S. at 555).[1]

In addressing a Rule 12(b)(6) motion, the court may not consider evidence proffered by any party. Rather, it is limited to

---

[1] The Second Circuit has not yet addressed the impact of <u>Twombly</u> on the assessment of pleadings by <u>pro</u> <u>se</u> litigants. We assume, however, that the plausibility test is applicable, but that the court's interpretation of what is said in the pleading must still accord with the flexible standard previously recognized when confronting a <u>pro</u> <u>se</u> pleading.

reviewing the four corners of the complaint, any documents attached to that pleading or incorporated in it by reference, any documents that are "integral" to the plaintiff's allegations even if not explicitly incorporated by reference, and facts of which the court may take judicial notice. See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S. Ct. 2499, 2509 (2007); ATSI Commc'ns, 493 F.3d at 98; Leonard F. v. Israel Disc. Bank of New York, 199 F.3d 99, 107 (2d Cir. 1999).

B. Assessment of Defendants' 12(b)(6) Arguments

      In defendants' initial papers, they separately challenge the adequacy of plaintiff's retaliation and due-process claims, and in their reply they also argue that plaintiff does not state a claim for denial of access to the courts, a claim first explicitly identified as such in plaintiff's opposing papers. Finally, they argue that they are entitled to invoke a qualified-immunity defense at the pleading stage, based solely on the allegations of the complaint. We address these arguments in that order.

1. Retaliation

      To state a claim for First Amendment retaliation, an inmate must allege (1) that he engaged in speech or conduct that was

protected by the First Amendment, (2) that he suffered an adverse action by the defendant, and (3) "that there was a causal connection between the protected speech and the adverse action." Espinal v. Goord, 554 F.3d 216, 227 (2d Cir. 2009) (quoting Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004)). There is no serious question that, for pleading purposes, plaintiff alleges protected activity, whether in the form of a complaint to the Inspector General or by the filing of internal grievances. See, e.g., Pidlypchak, 389 F.3d at 381, 383-84 (treating the filing of prison grievances as protected First Amendment activity). Defendants seem to question whether plaintiff has alleged that he was subjected to adverse actions, and they argue most vociferously that he fails to plead a causal connection between the protected activity and any adverse actions. We disagree except with respect to three of the defendants.

Although the Second Circuit has defined "adverse action" somewhat differently in prison and non-prison contexts, when an inmate asserts such a claim he must plead and prove that he was subjected to retaliatory actions "that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." Id. at 381 (quoting Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003)). He may do so either by alleging a serious injury that is independent of a possible First Amendment

chill, or by alleging that he has been chilled from engaging in the
First Amendment activities that triggered the retaliation. See id.
at 380-84.[2]   Moreover, the question of whether a given action is
sufficiently adverse to deter someone of "'ordinary firmness' from
exercising his rights" is a question of fact. See, e.g., Espinal,
554 F.3d at 227-28.

Plaintiff alleges a number of actions by some of the
defendants that are, for pleading purposes, sufficient to satisfy
the "adverse action" requirement. Most notably, he alleges the
filing of assertedly false disciplinary charges, resulting in a
one-year term in SHU and other sanctions. This plainly satisfies
the "adverse action" requirement. See Pidlypchak, 389 F.3d at 384
(finding disciplinary conviction and three weeks of keeplock
suffices). Moreover, plaintiff alleges the wonton destruction of
his personal property as well as the stealing of his legal and
personal papers, both of which should suffice, at least for
pleading purposes, to establish injuries that are independent of a
First Amendment chill, and could be found -- depending on the

_____

[2] In Pidlypchak the Second Circuit declined to decide the
precise contours of the "adverse action" requirement, but
reaffirmed that it was solely an objective test and that it could
be satisfied by a showing of injury independent of First
Amendment chill. Pidlypchak, 389 F.3d at 381-84. The Court also
expressed some apparent skepticism that a First Amendment chill
showing could be precluded by virtue of the fact that the
plaintiff had filed the lawsuit in which he asserted a
retaliation claim. See id. at 381.

circumstances -- sufficiently serious to deter an inmate "of ordinary firmness" from exercising his right to complain about staff misconduct. In addition, plaintiff alleges at least one instance of a direct threat of physical harm by a prison officer (Compl. ¶ 22), and further asserts in his motion papers that, as a result of his experiences at Green Haven, he has since been deterred from pressing charges against one of the defendants, now that he and that defendant are at the Attica Correctional Facility. (Pl.'s Mem. ¶ 18). Again, depending on the circumstances, this set of allegations, if proven, could suffice to demonstrate an objective chill, thus meeting the "adverse action" requirement.

One additional form of conduct alleged by plaintiff also appears to come at least arguably within the scope of adverse actions of sufficient moment to qualify as injurious independent of a First Amendment chill. Plaintiff alleges that a number of the defendants on various occasions indicated to other inmates that he was a child molester, a characterization that plaintiff claims endangered his physical safety in the prison and caused him severe psychological harm. (Compl. ¶¶ 15, 17, 26, 27, 31-32). If we assume the truth of these allegations -- as we must on this motion -- together with plaintiff's further allegation that as a result of the entire range of defendants' activities he has suffered severe psychological injury, they are also sufficient to meet the pleading

requirement for articulating an adverse action.[3]

The principal thrust of defendants' challenge to the retaliation claim as a whole is their assertion that plaintiff does not plead a causal connection between the protected activity and the adverse actions. This argument does not withstand scrutiny.

Plaintiff's original complaint was dismissed in part because he failed adequately to plead such a causal connection. The dismissal order focused on the fact that the pleading had cited, as plaintiff's protected activity, his filing of a complaint with the DOCS Inspector General while he was at the Great Meadow Correctional Facility and that it nonetheless did not allege any basis for inferring that any of the defendants -- all of whom were employed at Green Haven -- knew of the plaintiff's filing. The Order then directed that he fill that gap, among others. (Order dated Dec. 14, 2007 at 2-3).

In the amended complaint, plaintiff does not refer to the Inspector General complaint until nearly the end of the document (Compl. ¶ 31), and does not offer any factual allegations

---

[3] To the extent that plaintiff may rely on his allegations that some of the defendants orally threatened him, we do not view these assertions as in of themselves sufficient to satisfy the pleading requirement for adverse actions.

suggesting that any of the defendants had been aware of it when they engaged in the arguably adverse actions, although in his response to defendants' motion he asserts that "calls were made" from Great Meadow to Green Haven, warning of his transfer and proclivity for filing complaints. (Pl.'s Mem. ¶ 15). Instead, in the amended complaint he alleges that he filed or attempted to file a number of grievances at Green Haven against some of the defendants and also made oral complaints about some of them, and he suggests, both in the pleading and in his motion papers, that the defendant corrections officers and other DOCS staff members (including the Deputy Superintendent of Green Haven) were aware of his grievances and other complaints to senior staff as well as of his keeping a "log" of events at the prison and a list of officers with whom he had had problems, and that some of the defendants explicitly told him that they were retaliating for such activity or were planning to do so. (See, e.g., Compl. ¶¶ 14, 16, 18-19, 22-23, 27-28, 30; Pl.'s Mem. ¶¶ 8, 18-19).

These allegations, which refer to all but three defendants[4], plainly suffice to plead a causal connection between the protected activities and the adverse actions. If an inmate names a corrections officer in a grievance or makes an oral complaint about

---

[4] The exceptions are Officer Maypes-Rhynders and Sergeants Montegari and Hillman.

that officer to a supervisor, it is reasonable to infer that the officer in question will learn of that fact. Moreover, it also plausible to suggest that if an inmate files grievances against a number of officers, other prison staff at that level will also learn of plaintiff's activities. Furthermore, if, as plaintiff alleges, he was keeping a log (or memoir) apparently recounting the events that were giving rise to his complaints and keeping a list of disfavored corrections officers, and one or more prison staff members learned of that fact (see Compl. ¶¶ 19-20, 28), it is plausible to infer that other staffers would eventually hear about that as well.

In sum, plaintiff adequately pleads a claim for retaliation against some of the defendants. Based on the allegations in the complaint and the further elaboration in the plaintiff's motion papers, these include Officers Rapelee, MacIssaac, Fredricks, Lawfer, Melious, and Weckesser, and Deputy Superintendent Cunningham, all of whom are alleged to have undertaken arguably adverse actions against plaintiff in circumstances from which it could be inferred that they acted with retaliatory intent. By the same token, plaintiff does not state a retaliation claim against defendants Officer Maypes-Rhynders and Sergeants Montegari and Hillman, since he does not allege that they undertook such adverse actions in circumstances suggesting the necessary retaliatory

intent.

2. <u>Due Process</u>

Plaintiff's due-process claim is predicated on his allegations that defendants Melious and Lawfer filed false misconduct charges against him, which led to a hearing before defendant Cunningham, who found him guilty and punished him severely while freely admitting that he had prejudged the case and determined plaintiff's guilt before the hearing had even begun. (Compl. ¶ 29). Although defendants argue that these allegations do not state a claim, we disagree.

Defendants are correct in noting that the filing of false charges does not itself amount to a due-process violation. <u>See</u>, <u>e.g.</u>, <u>Freeman v. Rideout</u>, 808 F.2d 949, 951 (2d Cir. 1986), <u>reh. en banc</u> <u>denied</u>, 826 F.2d 194 (2d Cir. 1987).[5] If, however, these false charges trigger a hearing that is deficient under due-process standards, then the person who filed the charges may be held liable for their consequences. <u>See</u>, <u>e.g.</u>, <u>Jones v. Coughlin</u>, 45 F.3d 677, 679 (2d Cir. 1995); <u>Freeman</u>, 808 F.2d at 951-52.

---

[5] As noted, the filing of false charges in retaliation for the exercise of First Amendment rights may give rise to a First Amendment claim. <u>See</u> <u>Pidlypchak</u>, 389 F.3d at 384; <u>see also</u> <u>Franco v. Kelly</u>, 854 F.2d 584, 589 (2d Cir. 1988).

In this case plaintiff alleges that the hearing officer, defendant Cunningham, was biased, and indeed, he asserts that Cunningham admitted at the hearing that he had prejudged the case, possibly for retaliatory reasons. Although an inmate has only limited constitutionally-protected procedural rights in a disciplinary hearing, having his case heard by an unbiased decision-maker is one of them. See, e.g., Edwards v. Balisok, 520 U.S. 641, 647 (1997); Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004); Patterson v. Coughlin, 905 F.2d 564, 569-70 (2d Cir. 1990). Plaintiff adequately pleads such bias and its consequences, including a lengthy term in punitive isolation. Accordingly, he states a due-process claim against defendants Melious, Lawfer, and Cunningham.[6]

### 3. Denial of Access to the Courts

Although the complaint does not explicitly articulate a claim for denial of access to the courts, it does allege the seizure and destruction of legal papers. In plaintiff's motion papers, however, he further alleges that as a result of being deprived of those documents, he lost a lawsuit in the New York Court of Claims. (Pl.'s Mem. ¶ 6).

---

[6] Defendants do not press any other argument against the legal viability of the due-process claim.

Defendants argue that plaintiff fails to plead a claim. They assert (1) that he does not adequately allege that the seizure of his papers  resulted in the loss of a meritorious lawsuit, (2) that in any event the seizure of his papers resulted only in a delay in his having access to them, and (3) that this event was not part of a pattern of such interference, thus precluding plaintiff from being able to demonstrate a violation of his constitutional rights. (Defs.' Reply Mem. 2-3).

This argument fails at several levels. To state a claim for denial of access to the courts, "the plaintiff must allege that the defendant 'took or was responsible for actions "that hindered [a plaintiff's] efforts to pursue a legal claim."'" Davis, 320 F.3d at 351 (quoting Monsky v. Moraghan, 127 F.3d 243, 247 (2d Cir. 1997) (citing Lewis v. Casey, 518 U.S. 343, 351 (1996))). As summarized in a decision cited by defendants and quoted by the Second Circuit in Davis, "in order to survive a motion to dismiss a plaintiff must allege not only that the defendant's alleged conduct was deliberate and malicious, but also that the defendant's actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious claim." Cancel v. Goord, 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001).  Plaintiff has met that pleading test, as he asserts that defendants Melious and Lawfer "confiscated plaintiff[']s legal papers and due to the fact that they had not

returned them in a reasonable fashion plaintiff lost a case in the court of claims due to not presenting a prima facie case . . . ." (Pl.'s Mem. ¶ 6). Although not artfully worded, this allegation can fairly be read to say that but for the loss of the papers, he would have prevailed in his lawsuit. Nothing more is required under Rule 8(a).

Second, although plaintiff appears to imply that these particular papers may have been eventually returned to him, the fair implication is that they were not provided to him at a time when he needed them, and that as a result of this delay he lost the case. Again, Rule 8 does not require a more detailed pleading, especially from a <u>pro</u> <u>se</u> plaintiff.

Third, a claim for denial of access to the courts does not require an allegation (or proof) that the defendants engaged in an extended pattern of interference. Depending on the nature of the interference, one act may be serious enough to have imposed the required injurious consequence. <u>See</u>, <u>e.g.</u>, <u>Key v. Artuz</u>, 1995 WL 542466, at *1-2 (S.D.N.Y. Sept. 13, 1995).

In arguing that a pattern is required (Defs.' Reply Mem. 2-3), defendants confuse two different, if potentially related, claims, and also misstate the test for both. They cite the <u>Cancel</u> decision,

in which the court observed that, in asserting a claim for interference with legal mail coming into the prison, the inmate must demonstrate that prison officials "regularly and unjustifiably interfered with the incoming legal mail." Cancel, 2001 WL 303713, at *6. That is, in part, true as a statement of what plaintiff usually must prove on a mail-interference claim, but that is not the claim being asserted here by Smith. Rather, he is alleging an interference with court access based on the deliberate detention and/or destruction of legal papers that were already in his possession. As the Second Circuit made clear in Davis, these are two separate claims, even though a denial-of-access claim may be premised on a prison's interference with inmate mail, and they have different elements. See Davis, 320 F.3d at 351. Indeed, Cancel made the same distinction, compare 2001 WL 303713, at *4-5 (addressing claims of interference with court access) with id. at *6-7 (addressing claim of withholding of incoming legal mail), and the quotation that defendants invoke came from the discussion of the mail-interference claim, not the court-access claim.[7] Defendants

_____

[7] The mail-interference claim rests upon the right of an inmate to be present when legal mail is opened by the prison authorities. See Wolff v. McDonnell, 418 U.S. 539, 574-76 (1974). Even if plaintiff were asserting a mail-interference claim, it is not clear that a single incident, if sufficiently egregious, would not suffice. See Davis, 320 F.3d at 351 ("[A]n isolated incident of mail tampering is usually insufficient to establish a constitutional violation.") (emphasis added). Moreover, even if a multiple-episode requirement were applied to claims of seizing or destroying legal documents already in an inmate's possession, plaintiff would seem to have met that requirement with his

cite no legal authority, and we are aware of none, that requires pleading and proof of repeated instances of interference with access to the courts.

In sum, plaintiff states a claim on this set of allegations against defendants Melious and Lawfer.

4. Immunity

_____Defendants' remaining argument is that in any event they are entitled to dismissal on the basis of a qualified-immunity defense. This argument, which is cast in entirely conclusory, non-specific terms, is seriously misguided.

An individual defendant sued for damages may invoke a qualified-immunity defense if he can demonstrate that his conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known" at the time of the incident. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982);

---

allegation of two blatant instances of such interference. (Compl. ¶¶ 28, 30); see Davis, 320 F.3d at 351 ("In Washington we determined that as few as two incidents of mail tampering could constitute an actionable violation (1) if the incident suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received.") (quoting Washington v. James, 782 F.2d 1134, 1139 (2d Cir. 1986)).

see also Blouin v. Spitzer, 356 F.3d 348, 358 (2d Cir. 2004); Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003). The defendant will be deemed immune from liability if he can show either (1) that his conduct did not violate the plaintiff's "clearly established rights," or (2) that a reasonable person in the defendant's position could have believed, in view of all of the pertinent circumstances, that his conduct did not violate such a right. See, e.g., Kerman v. City of New York, 374 F.3d 93, 108-09 (2d Cir. 2004).

Typically such a defense rests on an evidentiary showing of what the defendant did and why, see, e.g., id. at 109; Hurlman v. Rice, 927 F.2d 74, 78 (2d Cir. 1991) (finding that the second prong of the qualified immunity analysis "has its principal focus on the particular facts of the case"), although there may be circumstances in which an immunity defense will be upheld based solely on the pleadings. That would be the case if the defendant's conduct, as alleged by the plaintiff in his complaint, did not transgress a "clearly established statutory or constitutional right," or if the circumstances of the conduct, as alleged in the complaint, indisputably demonstrate that a reasonable state actor in the position of the defendant could have believed that his conduct was lawful. See, e.g., Connell v. Signoracci, 153 F.3d 74, 80 (2d Cir. 1998); Liffiton v. Keuker, 850 F.2d 73, 76 (2d Cir. 1988).

In this case, defendants' immunity argument consists of two assertions, which we quote in full -- that "plaintiff has not pled a constitutional violation" and that "[i]n any event, there was no controlling authority that would have put defendants on notice that the actions alleged in the complaint were violations of plaintiff's constitutional rights." (Defs.' Mem. 6). These assertions are meritless.

The first argument is simply a repeat of defendants' insistence that the complaint fails to state a claim. To the extent that we have rejected that argument in large measure, its repetition in the guise of an immunity defense does not change the result.

The second argument fares no better. As our legal citations underscore, there is ample controlling precedent for the principles that an inmate has a right to be free from injurious retaliation for the exercise of his First Amendment rights, that he has a right not to be convicted and punished on disciplinary charges based on the findings of a biased decision-maker, and that he has a right to access to the courts which may not be subjected to deliberate, unreasonable, and prejudicial interference by prison personnel.

Whether there is any factual basis for plaintiff's claims and,

even if so, whether the circumstances of the alleged violations by defendants were such as to have led reasonable prison employees in defendants' situation to believe that their actions were not in violation of plaintiff's constitutional rights are matters that must be the subject of evidentiary presentations. An immunity defense cannot succeed in this case based solely on the pleadings.


CONCLUSION


For the reasons stated, we recommend that the defendants' motion to dismiss be granted with respect to defendants Officer Maypes-Rhynders and Sergeants Montegari and Hillman and otherwise denied.


Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Paul A. Crotty, Room 735, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72,

6(a), 6(e); Thomas v. Arn, 470 U.S. 140, 150-52 (1985); DeLeon v.
Strack, 234 F.3d 84, 86 (2d Cir. 2000) (citing Small v. Sec'y of
Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)).

**Dated: New York, New York**
     **March 10, 2009**

**MICHAEL H. DOLINGER**
**UNITED STATES MAGISTRATE JUDGE**

Copies of the foregoing Report and Recommendation and have been
mailed today to:

Mr. Julio Isley Smith
# 99-A-6505
Attica Correctional Facility
Exchange Street
P.O. Box 149
Attica, New York 14011-0149

Daniel A. Schultze, Esq.
Assistant Attorney General
   for the State of New York
120 Broadway
24th Floor
New York, New York 10271